The Cletrac Ohio Sales Company v. Commissioner.
Cletrac Ohio Sales Co. v. Commissioner
Docket No. 14673.
United States Tax Court
1948 Tax Ct. Memo LEXIS 153; 7 T.C.M. (CCH) 392; T.C.M. (RIA) 48116; June 25, 1948
*153 George Farr, Esq. and Ralph S. Tyler, Jr., Esq., Union Commerce Bldg., Cleveland, Ohio, for the petitioner. Lawrence R. Bloomenthal, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $482.38 for 1943 and deficiencies in excess profits tax of $7,978.51 for 1942 and $5,989.57 for 1943. The only issue for decision is whether he erred in determining those deficiencies by disallowing $6,000 of the total deduction of $24,000 claimed for each year as compensation of J. J. Turner, the president, and $600 of the deduction of $700 for 1942, and $800 of the deduction of $900 for 1943, claimed as compensation for Grace A. Turner, treasurer of the petitioner. Findings of Fact The returns for the taxable years were filed with the collector of internal revenue for the 18th district of Ohio. The petitioner was incorporated in 1926, at which time J.J. Turner became the owner of all but four qualifying shares out of 500 shares issued. The total capitalization was $500. He has continued to own these shares ever since. He was, at all times material hereto, the president of the petitioner and the *154 person responsible for its operation. J. J. Turner had been associated with the Cleveland Tractor Company for a number of years prior to 1926. The petitioner was organized in order to give the Cleveland Tractor Company a satisfactory distributor for the northeastern section of Ohio. J. J. Turner built up the business of the petitioner and either performed or closely supervised all of its activities. He was predominantly responsible for its sales. He actually worked in, and supervised, its service department. He managed its financial and other affairs. The petitioner has been engaged, since its incorporation, in selling industrial and agricultural tractors and road building and construction equipment at retail. The business included the sale of parts and the servicing of the equipment sold. It was an exclusive distributor for the Cleveland Tractor Company in certain counties in northeastern Ohio. It was also distributor for other companies whose products were used in conjunction with those of the Cleveland Tractor Company. The board of directors, consisting of Turner, his wife, and one other person, authorized an annual salary of $24,000 for Turner in 1941, which remained in effect *155 for the taxable years. The petitioner also had in force, during the taxable years, an approved employees' pension trust. The following table shows the salary received by Turner during the taxable years and years prior thereto, together with other pertinent information: Net Income
Dividends
J. J. Turner's
Gross Sales
After Taxes
Paid
Salary
1927
$ 82,978.00
$5,139.55
$ 3,600.00
1928
155,495.03
7,783.12
5,400.00
1929
164,509.14
4,792.23
6,000.00
1930
174,813.39
6,816.19
$4,960.00
6,000.00
1931
124,134.10
5,378.75
1932
69,911.47
4,190.00
1933
31,544.78
3,403.40
1934
46,359.79
3,712.80
1935
100,549.07
179.99
5,812.80
1936
199,779.54
3,609.23
2,500.00
5,047.00
1937
192,194.42
4,807.68
5,000.00
7,500.00
1938
155,975.64
2,427.33
2,500.00
7,000.00
1939
209,911.89
4,528.32
5,000.00
12,000.00
1940
265,360.14
4,879.50
5,000.00
15,500.00
1941
302,752.64
4,934.01
20,000.00
1942
230,441.17
6,968.25
5,000.00
* 25,482.08
1943
222,649.45
5,924.59
7,500.00
* 25,391.43
*156 Footnotes
*. Pension
1942 salary
$24,000
$1,482.08
1943 salary
24,000
1,391.43
The directors at their meeting in the latter part of December, 1941, decided to omit the annual dividend because of the uncertainty following the declaration of war earlier in that month. The surplus of the petitioner, after rising to about $24,000 in 1930, fell off to about $15,000 in 1940, and rose to almost $25,000 in 1942. It was $22,757.38 at the end of 1943. The total assets of the petitioner were about $46,000 during 1942 and declined to about $42,000 at the end of 1943. They consisted principally of cash and receivables. The sales of tractors declined during the taxable years due to government restrictions, while the sale of parts increased. The petitioner had a few salesmen prior to the taxable years but the last one left its employ in 1942. They were paid 5 per cent on sales brought in by them. About 12 persons were employed by the petitioner during the taxable years, a few of whom were in the office and the majority of whom were in the shop. A reasonable allowance for salary and other compensation for personal services actually rendered by J. J. Turner to the petitioner in carrying on its business is $25,482.08 for 1942 and $25,391.43 for 1943. The Commissioner allowed $18,000 for each year. Grace A. Turner, the wife of J. J. Turner, was a director and treasurer of the petitioner during the taxable years. She signed all checks, reviewed and approved vouchers, accepted calls for her husband when he was out of town and assisted in getting repair parts to customers in cases of emergency. She devoted a relatively small part of her time to the affairs of the petitioner. She received a salary from the time she was made treasurer, in 1940. Her salary for 1942 was $700 and her salary for 1943 was $900. A reasonable allowance for personal services actually rendered by her to the petitioner is $250 for each of the taxable years. The Commissioner allowed $100 for each year. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The petitioner was actually a one-man corporation. That one man was J. J. Turner. He built up its business and, during the taxable years, which incidentally were difficult years due to the war, he worked hard to make it as successful as possible. He completely dominated the petitioner and probably could vote himself whatever salary he chose. However, the corporation declared a substantial dividend during each of the taxable years, which dividends were extremely large compared with the small amount of capital invested and used in the business. The corporation had a substantial amount of net income during each, of the taxable years after all expenses, including taxes. The dividends paid during the two taxable years amounted to $12,500, while the earnings were slightly in excess of that amount. There is evidence to show that the services rendered by Turner were worth the amount which the corporation paid him. There is no evidence to the contrary. The services rendered by Grace were not of any great importance. The record does not show that she had any particular training which fitted her to perform important services. She might have spent as much as 125 hours during the course of a year attending to the business of the petitioner. The respondent recognizes that she rendered some services justifying a deduction. A finding has been made that a reasonable allowance for compensation for services performed by her during each year is $250. This reduction in the deduction allowed for her salary is almost trivial but, clearly, the amount paid to her and claimed by her is excessive for the services which she rendered. Decision will be entered under Rule 50. ↩